**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

                Plaintiff,

v.                               CRIMINAL ACTION NO. 2:21-cr-00146

KEVIN COMER,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *United States' Motion in Limine to Admit Evidence as Intrinsic to the Case or, Alternatively, Pursuant to Fed. R. Evid. 404(b)* (Document 27) wherein the United States seeks permission to introduce three categories of evidence of the Defendant's conduct both before and after the charged event.  The Defendant did not file a response to the motion.  For the reasons detailed herein, the Court finds that the motion should be granted.

**FACTUAL ALLEGATIONS**

On August 10, 2021, the Defendant, Kevin Comer, was charged in a single-count indictment with Willfully Causing a False Statement to be Made in a Matter within the Jurisdiction of the Executive Branch in violation of 18 U.S.C. §§ 1001(a)(2) and 2(b). (Document 1). Specifically, the United States alleges that the Defendant, Kevin Comer, willfully caused a candidate for sheriff of Jackson County, West Virginia, "N.B.," to unknowingly report a false civil rights complaint against his electoral opponent. *Id.*  To support the charge, the indictment alleges the following.

On or about March 10, 2020, the Defendant contacted an individual identified in the indictment as "Person 2" by telephone and represented himself as "Josh Williams." Person 2, now identified as "N.B.," was a candidate for sheriff of Jackson County and former law enforcement officer, and "Josh Williams" is a "fictious persona created by the defendant." *Id.* In the call, the Defendant claimed to have been the victim of targeted harassment by another candidate for sheriff, in his capacity as a law enforcement officer. This individual, identified by the indictment as Person 1, is now identified as "R.M." N.B. informed "Josh Williams," that he planned to report R.M.'s alleged conduct to the FBI.[1]

With the knowledge that he intended to report the encounter, the Defendant again called N.B. as "Josh Williams." In the second conversation, he "knowingly and willfully provided false information about the encounter," and alleged that R.M. had "assaulted" him in his capacity as an officer.[2] *Id.* N.B. once again informed the Defendant of his intent to report the allegations to the FBI, and that he intended to do so the following day.

The indictment continues to allege that on or about, March 11, 2020, N.B. did, in fact, report the allegations to an FBI Special Agent at the FBI office in Charleston, West Virginia.[3] After the report, FBI agents investigated the purported federal civil rights crime. No one with the FBI had knowledge that "Josh Williams" was a "fictious persona" until on or about May 19, 2020, when an officer with a different Federal agency connected the Defendant with "Josh Williams."

---

1 In its motion, the United States asserts that this conduct stemmed from a "rogue investigation" into N.B. due to the Defendant's concerns that N.B. was counselling individuals to file civil rights complaints against his main opponent in the election. (Document 27). He had reported this concern to Special Agent Brian Morris with the Department of Homeland Security, who initiated an investigation. Without consulting with Special Agent Morris, however, the Defendant purportedly decided to continue the investigation himself.

2 The allegations on the second call included allegations that "R.M. handcuffed him, shoved him to the ground, and forcefully stepped on his head." (Document 27).

3 In reporting the allegations, "N.B. reported that the reason he came to the FBI that day was because Josh Williams was assaulted over the weekend by R.M." (Document 27).

Finally, it alleges that while the Defendant was aware that "Josh Williams" was not a real person, N.B. was not.

Considering this alleged conduct, in its motion, the United States identifies three categories of evidence related to the Defendant's conduct before and after the charged event that it proffers will show the Defendant's motivation to harm N.B. and tell the full story of the alleged offense. Specifically, it seeks permission to introduce: "(1) a phone call between Defendant and N.B. that occurred on October 9, 2019, during which Defendant threatened N.B.; (2) recorded phone calls that occurred after the charged event between Defendant, pretending to be 'Josh Williams,' and N.B. wherein Defendant perpetuates the hoax; and (3) Facebook posts from a 'JJ Williams' account that Defendant created to legitimize the 'Josh Williams' hoax." *Id.*

The initial phone call arose after N.B. discovered that the Defendant had created a Facebook group called "Bad Apple [N.B.]" which sought to criticize N.B. and undermine his candidacy. After he learned of the group, N.B. called the Defendant on October 9, 2019.[4] The Defendant proceeded to explain that he felt N.B. was unqualified and pressured him to drop out of the race or risk the exposure of additional damaging information. The recording concludes with the Defendant stating, "Well listen. Hang on, buckle your seatbelt, hold on cause' it's gonna' get rough. Watch and see." (Document 27).

Next, the United States proffers a series of at least 15 recorded calls between the Defendant, acting as Josh Williams, and N.B., that occurred in the months following the period included in the indictment.[5] First, the Defendant allegedly called N.B. as Josh Williams the evening of March

---

4 The United States notes that the Defendant recorded the call and voluntarily played the recording for FBI Agents during an interview on July 23, 2020.

5 The calls, which the Defendant admitted to recording, were obtained by the FBI investigation. The calls often began with the Defendant stating the date and time of the call.

11, 2020, to falsely inform N.B. that he had been contacted by the FBI and gave specific details of the conversation.  Over four months, the Defendant placed additional phone calls wherein he "detailed fake meetings that he had with the FBI, provided additional information relevant to the hoax encounter with R.M., and discussed testifying in this matter." (Document 27).  N.B. "believed the hoax perpetrated by the Defendant was real until July 7, 2020." *Id.*

Finally, the United States seeks introduction of evidence from a "JJ Williams" Facebook page, created in June of 2020 by the Defendant.[6]   In July of 2020, the account published a series of posts "disparaging N.B. and claiming that N.B. attempted to coach him to file a lawsuit against R.M. and on how to be believed by the FBI." (Document 27).   Several edited portions of the recorded phone calls between the Defendant and N.B. were then posted to the account.  Some of these clips "made it appear that N.B. was threatening to harm R.M." *Id.*

## DISCUSSION

The United States asserts that the proposed evidence is admissible for either of two reasons. They argue that this evidence should be permitted as intrinsic evidence outside the scope of Federal Rule of Evidence 404(b) related to the introduction of other "bad acts" of the Defendant.  Further, they argue that even if the evidence was not intrinsic, it would be admissible under Rule 404(b) to show the Defendant's intent, motivation, and knowledge.  As detailed herein, either justification independently provides basis for admission of the evidence.

---

6 The United States notes that in a recorded interview with the FBI, the Defendant admitted that he was responsible for the account, but that others had access to the account, and he was not responsible for all of the posts.

A. *Intrinsic Evidence*

The United States' proposed evidence is admissible as it is intrinsic to the chain of events surrounding the crime and is necessary to complete the full story of the Defendant's conduct. While Rule 404(b) generally prohibits evidence of prior bad acts for purpose of proving the Defendant's character, it only applies to evidence of acts that are *extrinsic* to the act charged. *United States v. Cooper*, 482 F.3d 658, 663 (4th Cir. 2007) (citing *United States v. Lipford*, 203 F.3d 259, 268 (4th Cir. 2000)). Evidence that is instead *intrinsic* to the alleged crime falls outside the limitations of Rule 404(b). *Id.* Evidence is intrinsic if it is necessary to provide context relevant to the criminal charge or necessary to complete the story of the crime. *See United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009); *United States v. Kennedy*, 32 F.3d 876, 886 (4th Cir. 1994). This is true even if the evidence arose from conduct prior to or after the period included in the indictment. *Kennedy*, 32 F.3d at 885.

Evidence is also intrinsic if it is inextricably intertwined with the crime charged, or otherwise part of the same chain of conduct or transactions as the charged event. *United States v. Bush*, 944 F.3d 189, 196 (4th Cir. 2019) (citing *United States v. Chin*, 83 F.3d 83, 88 (4th Cir. 1996)). Evidence is inextricably intertwined with the evidence of the crime charged when it "forms an integral and natural part" of the surrounding circumstances and accounts of the offenses charged. *United States v. Lighty*, 616 F.3d 321, 352 (4th Cir. 2010) (internal citations omitted).

In this case, the United States alleges that the Defendant engaged in a broad hoax at N.B.'s expense, built on personal animus for N.B. Therefore, evidence that illustrates the breadth of the

hoax, and which is an integral and natural part of the hoax and its context, is inextricably intertwined with the alleged crime and is therefore intrinsic.

As detailed in the factual allegation above, the United States seeks to introduce the October 9, 2019 telephone call, purportedly between the Defendant and N.B.  The call predates the dates included in the indictment by several months, but the United States argues it is necessary to understand the preexisting relationship between the parties.  The call, as described, is inextricably intertwined with the broader hoax that is alleged.  It ostensibly includes the Defendant pushing N.B. to drop out of the election or risk the emergence of damaging information.  N.B. did not drop out of the race, and the Defendant then allegedly proceeded to engage in a prolonged attempt to incriminate N.B. and ultimately chose to release that information publicly.  This phone call, prior to that alleged conduct, is necessary to understand the full context of the alleged offense.

The subsequent series of phone calls, detailed above, are similarly intrinsic to the alleged offense. These calls, as alleged, despite occurring after the charged conduct, evidence the continuation and completion of the charged offense.  The calls, occurring over a series of months, provide necessary context to the broader hoax alleged in the indictment.  The full story of the charged offense would not be complete without inclusion of the multiple detailed follow up calls the Defendant purportedly made.

Finally, the Facebook account and posts are also intrinsic to the charged offense. These posts allegedly illustrate how the calls were ultimately used by the Defendant.   The posts provide essential context of how the alleged hoax was concluded.  Despite the posts occurring after the FBI became aware that "Josh Williams" was a "fictitious persona," it is necessary to complete the

story of the criminal conduct as alleged.  Absent these posts, critical context relevant to the charge would be improperly hidden from the fact finder.

Therefore, because each category of evidence is inextricably intertwined with the crime charged and are part of a single chain of conduct relevant to the crime charged, the evidence is admissible as intrinsic to the charge and outside the limitations of Rule 404(b).

### B.  Rule 404(b) Evidence

Even if the evidence detailed above was not intrinsic to the crime, it is admissible under Rule 404(b) as evidence of the Defendant's intent, motivation, and/or knowledge.  As discussed, Rule 404(b) of the Federal Rules of evidence precludes the introduction of evidence of prior bad acts of a defendant to show that the defendant acted in accordance with that prior conduct on a particular occasion. This prohibition is based upon the risk that this category of evidence may unduly influence the fact finder and impede a fair opportunity to defend the instant charge.  *United State v. Hernandez*, 975 F.2d 1035, 1038-40 (4th Cir. 1992) (citations omitted).  Rule 404(b), however, provides an exception to this rule when the evidence is offered for a separate purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." F.R.E. 404(b).  While the exceptions are clear limitations to admissibility, the exceptions are not construed narrowly, and so long as evidence of this nature is not introduced for the purpose of proving criminal disposition, it may typically be admitted. *United States v. Russell*, 971 F.2d 1098, 1106 (4th Cir. 1992).

However, due to the danger that this type of evidence will be impermissibly considered as character evidence or evidence of criminal proclivity, the Fourth Circuit has outlined criteria for courts to consider when determining its admissibility.  *United States v. McBride*, 676 F.3d 385,

396 (4th Cir. 2012).  Thus, to be admissible, the evidence must meet the four-factor test as set forth

in *United States v. Queen*:

> (1) The evidence must be relevant to an issue, such as an element of
> an offense, and must not be offered to establish the general character
> of the defendant. In this regard, the more similar the prior act is (in
> terms of physical similarity or mental state) to the act being proved,
> the more relevant it becomes.  (2) The act must be necessary in the
> sense that it is probative of an essential claim or an element of the
> offense.  (3) The evidence must be reliable.  And (4) the evidence's
> probative value must not be substantially outweighed by confusion
> or unfair prejudice in the sense that it tends to subordinate reason to
> emotion in the factfinding process.

132 F.3d 991, 997 (4th Cir. 1997).[7]  In this case, each prong is met with respect to each of the three

proposed categories of evidence.

First, the initial October 9, 2019 call, detailed above, is precisely the type of evidence that

Rule 404(b) permits in accordance with the *Queen* factors.  The call, which illustrates that prior to

the alleged offense the Defendant appeared to dislike N.B. and even threaten him, is relevant

toward establishing both the motive and the intent of the Defendant.  Additionally, the call is

probative of an essential element of the offense in that it could be evidence of the Defendant's

willfulness in the minds of the jurors.  The United States carries the burden to prove, among other

elements, that this is not merely an innocent prank. This call is probative of that key element.  The

evidence is also reliable as it is a recorded call authenticated by the Defendant and voluntarily

shared with FBI agents.  Finally, while the call is certainly prejudicial to the Defendant, this

prejudice does not substantially outweigh the probative value for the reasons discussed.

---

7 Additionally, the Fourth Circuit adds additional protections against potential misuse of this evidence by requiring
the Government to provide prior notice of intent to introduce this type of evidence, and a limiting jury instruction to
explain its proper consideration.  *McBride*, 676 F.3d at 396 (citing *Queen*, 132 F.3d at 997).  The United States has
met its burden of notice with this and previous filings.

The subsequent calls between the Defendant and N.B. are admissible for similar reasons. The calls, which illustrate the extent to which the Defendant allegedly went to perpetuate the charged offense, are relevant to establishing the Defendant's intent. The calls, as described, are highly probative of the alleged intention to prolong and deepen the "hoax," and are probative of the same necessary elements as the October 2019 phone call. Additionally, the calls, recorded by the Defendant with many including the Defendant stating the date and time of recording, are sufficiently reliable. Further, due to the noted relevance and importance of the recordings, any prejudicial impact does not substantially outweigh the probative value.

Finally, the Facebook account and posts are similarly admissible under Rule 404(b). The account, which the Defendant apparently admitted to creating, posted disparaging information about N.B. and edited versions of the recorded conversations. This is highly relevant to the Defendant's alleged intent to harm N.B. Further, it is necessary to establish the requisite intent and willfulness discussed above. The account and posts are also reliable for the same reasons as the phone calls.[8]   Additionally, despite their prejudicial nature, the posts' prejudicial impact on the Defendant does not substantially outweigh their highly probative value.

Having examined all the proposed evidence, because it is relevant to the Defendant's motive and intent, it would be necessary toward explaining an essential element of the offense, it is reliable, and its probative value is not substantially outweighed by its prejudicial nature, the Court finds that it is *alternatively* admissible under Rule 404(b).

---

[8] While the Defendant may contest whether he personally posted some of the posts, this is a factual dispute to be challenged at trial and does not impact the overall reliability of the evidence for purposes of its admissibility.

**CONCLUSION**

Wherefore, after careful consideration, the Court **ORDERS** that the *United States' Motion in Limine to Admit Evidence as Intrinsic to the Case or, Alternatively, Pursuant to Fed. R. Evid. 404(b)* (Document 27) be **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER:    April 27, 2022

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

10